Charles WARE, Petitioner,

v.

The Hon. Raymond W. GRAHAM, and the Hon. W. Lee Johnson, Judges of the District Court, Tulsa County, Oklahoma, Respondents.

No. A–13962.

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1966.

Curtis L. Lawson, Tulsa, for petitioner.

David Hall, County Atty., and Ted Flanagan, Asst. County Atty., Tulsa County, Tulsa, for respondents.

BRETT, Judge.

This is an original proceeding in which petitioner requests this Court to issue a writ of prohibition to prohibit the district court of Tulsa County from trying petitioner a second time for the crime of murder; and for the issuance of a writ of mandamus requiring respondents to accept an alleged verdict of "guilty for first degree manslaughter", and for said court to pronounce sentence on petitioner.

This Court assumed jurisdiction of this matter and heard oral arguments on July 13, 1966. At the conclusion thereof an evidentiary hearing was ordered to be conducted by the Hon. Raymond W. Graham, district judge. Insofar as petitioner alleges certain actions to have occurred between the court and the jury after it was discharged, the evidentiary hearing was directed to inquire into matters contained in the petition filed herein.

The Honorable District Judge conducted said hearing on July 22, 1966. A second hearing for further oral argument was set in this Court to be had on July 26, 1966, after the transcript of the district court hearing became available. Petitioner was represented by Curtis Lawson, of Tulsa, Oklahoma, and the respondents were represented by Ted Flanagan, assistant county attorney for Tulsa County.

Petitioner alleges that he was tried in Tulsa County district court on December 16, 1965, for the crime of murder. That after both sides rested their case, the jury was properly charged, and the case was submitted to the jury. The jury deliberated for a considerable length of time, and was returned to the court room about 10:45 P.M. The foreman announced that the jury was deadlocked. The court proceeded to inquire of the foreman concerning the cause of the deadlock. The court then proceeded to poll the jury individually by asking, "Do you feel that there is any possibility of reaching a verdict?" Each member of the jury indicated that they could not, and that further deliberation would be futile.

Thereafter the following transpired between the court and the foreman:

"The Court: Now, I would state to the jury that if the deadlock is a result of the amount of punishment that the defendant may receive, that that matter may be left to the discretion of the Court and that the Court assess the punishment, but if your deadlock concerns guilt or innocence, of course, that could never be resolved by anyone but you, and I would ask the foreman of the jury at this time, is the deadlock concerning guilt or innocence, or is it concerning the amount of punishment that the defendant would receive?

"The Foreman: The great difference **is** between guilt—

The Court: Guilt and innocence?

"The Foreman: And not the sentence. We have explored a number of ways, every way it could be.

"The Court: Well, the Court has no alternative but to declare the mistrial and release the jury from further service. Thank you for your attention during the trial. You are now excused to report back at the regular time tomorrow."

Petitioner contends that immediately after the judge declared the mistrial, and while all the members of the jury, the prosecutor and defendant were still in the court room, some of the members of the jury stated to the court that the jury had reached a verdict of manslaughter, but was deadlocked on the punishment to be given the defendant. Petitioner's counsel then moved the court to reconvene the trial, accept the jury's verdict of guilty on a manslaughter charge, and to assess the punishment therefor.

The court having already discharged the jury, refused to reverse his order declaring the mistrial. Thereafter, petitioner filed his action in this Court asking for an alternative writ.

Seven of the jurors appeared at the evidentiary hearing and gave their individual impressions of what transpired. The transcript of the proceedings reveals that initially several jurors felt the defendant was guilty of murder; two felt he should be acquitted; and the remainder of the jurors thought the defendant was guilty of manslaughter. After the first indication was made known, without taking a written poll, the jury continued to discuss the matter. It is also evident, that no poll was ever taken concerning what crime the defendant might be guilty of. The jury did, however, take a vote concerning their responsibility to fix punishment, and it was agreed that it was their responsibility and should not be left to the judge. From that point on, the jury

continued to discuss different amounts of punishment, which might be assessed.

When the foreman of the jury testified, he was most positive when he said, "I will say positively we never reached a verdict of any kind". The other jurors who testified indicated that notwithstanding the fact that no ballot was taken on the specific question of guilt or innocence, they felt that it was generally agreed the defendant was guilty of manslaughter, *if they could agree on the amount of punishment* to be given the defendant. The record is quite clear, however, that the jurors did not at any time agree on the amount of punishment the defendant should receive.

The record is not clear concerning who was present in the court room when the matter was made known to the court. The foreman stated that he thought he had left the court room. The prosecutor stated that he had left the court room when the discussion was had; and, while he was waiting for the elevator, he saw several of the jurors waiting for the same elevator. None of the jurors who testified could state with certainty that all the jurors were present in the court room, when the matter came up.

■ The third paragraph of the syllabus in Harrell v. State, 43 Okl.Cr. 278, 278 P. 404, recites:

"Where the jury has returned its verdict which has been received by the court, and the jury has been discharged, and has left the presence of the court and mingled with the public, the court is without power to recall the members of the jury and to require or permit them to amend the verdict."

■ Harrell v. State, supra, recites from California case, People v. Lee Yune Chong, 94 Cal. 379, 29 P. 776, syllabus 1:

"Where the jury, in a criminal case, after rendering a defective verdict, which is accepted by the court, are discharged, their functions as jurors cease, and they cannot be recalled, and directed to find a new verdict as they intended; and, if such proceedings are taken, they and the new verdict are a nullity."

In the instant case, no verdict was returned by the jury. It seems logical to conclude that wherein the court lacks power to recall a jury to amend a faulty verdict, then the court likewise lacks the power to recall a jury which returned no verdict at all.

 Title 22 Okl.St.Ann. § 896 provides in part:

"* * * [T]he jury cannot be discharged after the cause is submitted to them * * * unless at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree."

21 Am.Jur.2d, "Criminal Law", § 204, p. 252, recites:

"Whether the circumstances are such as to justify the conclusion that the jury will be unable to agree on a verdict is to be determined by the exercise of sound judicial discretion. The conclusion of the court is not open to collateral attack."

Title 22 Okl.St.Ann. § 919 provides:

"If the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it, and *it cannot be recorded until it be rendered in some form from which it can be clearly understood what is the intent of the jury.*" (Emphasis added)

The record is quite clear that the jury did not convey it's intent to the court. The court made more than a reasonable effort to determine what the jury's intention was, but was unable to determine such intention. As was said in Smith v. State, 83 Okl.Cr. 392, 177 P.2d 523, 524:

"The fact is, that, whatever the jury had in their minds in this case, they did not express it with that degree of certainty required in so serious a matter as a verdict * * *."

After having carefully considered the record before this Court, we are of the opinion that the trial judge clearly acted within his judicial discretion when he declared the mistrial and discharged the jury.

Petitioner's allegations are not sustained by the evidence contained in the record.

We are also of the opinion that when the trial judge reaches the conclusion, after having made sufficient inquiry whether or not the jury can reach a verdict, that the jury cannot reach a verdict in the cause, he is justified in declaring a mistrial and discharging the jury. Further, when the court declares a mistrial and discharges the jury, their functions as jurors cease, and they cannot be recalled.

We are of the opinion that the writs prayed for by petitioner should be, and the same are, therefore, denied.

BUSSEY, P. J., and NIX, J., concur.